IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | Cr. No. 05-57T |
| v. | ) | |
| | ) | |
| RENE H. TORRES | | |

# UNITED STATES' MEMORANDUM IN SUPPORT OF ITS OBJECTION TO DEFENDANT'S MOTION TO SUPPRESS PHYSICAL EVIDENCE

## I. Introduction

Defendant Rene H. Torres is charged with a violation of 18 U.S.C. § 922(g)(1), possession of a firearm after being convicted of a felony. On June 6, 2005, Defendant filed a Motion to Suppress Physical Evidence and supporting memorandum. The United States objects to Defendant's motion to suppress because the averments contained in the affidavit submitted in support of the search warrant more than demonstrate that probable cause existed to believe that the Defendant was engaged in the sale of illegal narcotics in the third floor apartment at 688 Broadway, Pawtucket, Rhode Island, and that evidence relevant to his commission of such crimes was located there. Accordingly, Defendant's motion to suppress should be denied.

## II. Factual Background

On March 17, 2004, Detective Robert Tefft of the Pawtucket Police Department submitted an affidavit of probable cause in support of a search warrant to search Defendant's third floor apartment at 688 Broadway Pawtucket, Rhode Island, as well as the basement of the building.[1] (Ex. 1.) The affidavit began by stating that members of the Pawtucket Police Special Squad had received information from "numerous" sources that the Defendant was trafficking in large quantities of cocaine from 688 Broadway. These same "sources" reported that: (1) the

[1] Police also sought a warrant to search the second floor apartment at 688 Broadway based on the identical affidavit. (Ex. 2.)

Defendant, a/k/a Gizmo, was trafficking in kilogram quantities of cocaine from Florida to 688 Broadway; (2) based on his fears of being raided by the police, Defendant only maintained small quantities of cocaine in his third floor apartment; (3) Defendant maintained a safe in the vacant second floor apartment at 688 Broadway where he stored kilograms of cocaine; (4) Defendant informed the sources that by keeping the second floor apartment vacant, should police locate the safe and cocaine, the police would not be able to charge him with the same; (5) Defendant also maintained additional quantities of cocaine in the basement area of the building; (6) Defendant informed the sources that if the police were to search the basement area of the building, since it is a common area, they could not attribute the cocaine to him and would think that they had found the majority of the cocaine, and thus, would not search the second floor apartment; (7) Defendant maintained video surveillance cameras in the third floor windows and in the stairway leading up to the third floor; (8) 688 Broadway is owned by a relative of his wife's, and that her family's awareness of his drug activity caused Torres to be comfortable storing large quantities of cocaine in the building. (Ex. 1 at 1.) The sources also reported that Defendant lived in the third floor apartment with his wife, Wendy.

In addition, the affidavit described a controlled purchase which took place between March 13 and 16, 2004, during which a confidential informant (CI) entered 688 Broadway and purchased a quantity of cocaine from the Defendant, a/k/a/ Gizmo. Upon meeting with police after the drug purchase, the CI reported that during the transaction the Defendant took the money for the purchase on the third floor of the building and then went to the basement to retrieve the cocaine. (Ex. 1 at 1-2.)

Furthermore, the affidavit contained statements from Detective Tefft that based on his knowledge, training and experience, remarking on the significance of much of the sources' and CI's information. (Ex. 1 at 2.)

Based on the averments of probable cause contained in Tefft's affidavit, on March 17, 2004, Magistrate Joseph P. Ippolitto of the State of Rhode Island, District Court, issued a search

warrant for the third floor apartment and basement at 688 Broadway.[2] (Ex. 1.) On March 22, 2004, pursuant to the search warrant, members of the Pawtucket Police Special Squad executed the court authorized search warrant.

During the execution of the warrant, in addition to cable boxes through which the Defendant was illegally receiving premium cable channels and numerous bottles of prescription pain killers, police officers found a loaded .32 caliber Beretta semi-automatic pistol. (Ex. 3.) Police arrested the Defendant and his wife, transported them to the Pawtucket Police Station, and gave them their Miranda warnings. Wendy Torres stated that she had never seen the gun before. The Defendant admitted that approximately two weeks prior to the search he purchased the gun for $200 from an individual named "Zeke" for home protection.[3] Based on a prior 1992 conviction for possession with intent to deliver cocaine, Pawtucket Police charged Rene Torres with possession of a firearm by a convicted felon and theft of telecommunications services. (Ex. 4.) Police charged Wendy Torres with theft of telecommunications services. (Id.)

Based on the above, and the fact that Torres had previously been convicted of a felony, on April 6, 2005, the United States filed a criminal complaint charging him with a violation of 18 U.S.C. § 922(g)(1). On May 4, 2005, the grand jury returned an indictment charging the same.

## III. Argument

Defendant maintains that the search warrant is invalid because it lacks indicia that the sources providing the information in the affidavit had proven reliable in the past. Def.'s Mem. in Supp. of Mot. to Suppress (Def.'s Supp. Mem.) at 2. Defendant further contends that the warrant is deficient because the affidavit fails to describe whether the CI who conducted the controlled purchase of cocaine from the Defendant had been reliable in the past and whether he was the

---

[2] The Magistrate also issued a search warrant for the second floor apartment which was not executed. (Ex. 2.)

[3] Simultaneous to filing the instant motion, Defendant has also filed a motion to suppress the statement he provided to police.

same individual providing information contained elsewhere in the affidavit. (Id. at 3.)

The motion to suppress should be denied. Defendant is mistaken that an affidavit submitted in support of probable cause is deficient where it lacks a statement by law enforcement concerning the reliability of the informants cited therein. In addition, in the present case, the veracity of the sources who provided the information contained in the affidavit is demonstrated by: (1) the fact that much of the information reported is based on first-hand conversations with the Defendant and the face-to-face controlled buy conducted by the CI; (2) the level of detail provided concerning the manner in which the Defendant conducted his drug dealing; (3) the fact that material elements of the sources' information are corroborated by the CI's controlled purchase of cocaine; and (4) Detective Tefft's professional assessment concerning the significance of facts related by the sources and the CI.[4]

**A. The Court Need Not Conduct a Hearing on the Motion to Suppress**

Defendant does not request a hearing on his motion to suppress and the United States contends that in the absence of a Franks-type challenge by the Defendant, see Franks v. Delaware, 438 U.S. 154, 171-72 (1978), the Court may decide the motion based on a review of the four corners of the document. See also United States Migely, 596 F.2d 511, 513 (1st Cir. 1979) (holding that evidentiary hearing on defendant's challenge to warrantless search required only after defendant makes sufficient showing).

**B. The Probable Cause Standard**

"For evidence to avert suppression, see generally Mapp v. Ohio, 367 U.S. 643 (1961), normally the warrant application must demonstrate probable cause to believe that a particular

---

[4] The United States also notes that the Court may uphold evidence seized pursuant to a warrant on the basis that the officers who conducted the search relied "reasonably . . . on a warrant issued by a detached and neutral magistrate." United States v. Leon, 468 U.S. 897, 913 (1984). In the instant case, the Court need not initially address this issue in light of the United States' position that the search warrant was supported by probable cause. Should the Court determine otherwise, however, the United States reserves its right to argue that the search warrant should be upheld on this alternative ground.

person has committed a crime – 'the commission element' – and that enumerated evidence relevant to the probable criminality likely is located at the place to be searched – 'the nexus element.' " United States v. Zayas-Diaz, 95 F.3d 105, 110-11 (1st Cir. 1996) (quoting United States v. Fuccillo, 808 F.2d 173, 175 (1st Cir. 1987)). Probable cause demands that the "totality of the circumstances disclosed in the supporting affidavits must demonstrate 'a fair probability that contraband or evidence of a crime will be found in a particular place.' " Zayas-Diaz, 95 F.3d at 111 (quoting Illinois v. Gates, 462 U.S. 213, 238 (1983). The question of whether probable cause exists is a "commonsense, practical question." Gates, 462 U.S. at 230. Some of the more pertinent factors that may contribute to whether an affidavit supports probable cause are: (1) the "veracity" or "basis of knowledge" of the individuals supplying hearsay information; (2) whether the source's statements are self-authenticating; (3) whether any of the source's information was corroborated wherever "reasonable and practicable; and (4) whether the law enforcement affiant included "a professional assessment of the probable significance of the facts related by the [source], based on experience or expertise." Zayas-Diaz, 95 F.3d at 111 (internal quotations omitted). "None of these factors is indispensable; thus, stronger evidence on one or more factors may compensate for a weaker or deficient showing on another." Id. Analysis of each of these factors demonstrate that the affidavit in the instant case clearly supported probable cause to believe that the Defendant was engaged in narcotics trafficking and that paraphernalia related to such criminal activity would be located in the third floor apartment and basement of 688 Broadway.

### C. Material Elements of the Affidavit are Based on First Hand Knowledge of the Sources and the CI

Defendant contends that the fact that the affidavit is devoid of any statement concerning the "sources" reliability or the reliability of the CI conducting the controlled buy is fatal to the question concerning whether the statements contained therein support probable cause. He is mistaken.

In United States v. Harris, 403 U.S. 573, 581-82 (1971), the Court held that a warrant affidavit did not require an averment as to the previous reliability of the informant. Instead, the relevant inquiry is "whether the informant's present information is truthful or reliable." United States v. Cochrane, 896 F.2d 635, 641 (1st Cir. 1990). "[A]n important indicia of reliability is the fact that the informant's knowledge was based upon personal observation rather than hearsay." Id.

Although the affidavit does not specifically state that much of the information provided by the sources derived from their first-hand knowledge, nothing in the affidavit demonstrates to the contrary. In fact, the affidavit reveals that several of the pieces of information supplied in support of probable cause were clearly based on the personal knowledge, as opposed to hearsay understanding, of both the sources and the CI.

The sources referred to in the first portion of the affidavit, whom Detective Tefft described as "numerous," are averred to have reported two areas of information which the Defendant communicated directly to them. The affidavit states that "Rene Torres reportedly told these sources that by maintaining the 2nd floor apartment as vacant, if the police were to raid this apartment and locate the safe, the police would not be able to charge him with the cocaine." (Ex. 1 at 1.) In addition, the affidavit avers that the Defendant "reportedly told the sources that if the police search the basement and locate the cocaine stored there they would not be able to approximate it to him as it is a common area of this three floor apartment building, and also that if the police did locate the cocaine in the basement that they would not be inclined to search the second floor apartment thinking that had (sic) found the majority of the cocaine in the basement." (Id.)

Moreover, the affidavit contains a description of the controlled buy accomplished by the CI – an event in which the CI was personally involved. Prior to entering 688 Broadway, the police searched the CI for contraband – they found none. Police observed him enter 688 Broadway and subsequently exit several minutes later where he turned over a package which

subsequently tested positive for cocaine. (Ex. 1 at 1-2.) A controlled purchase of the kind performed by the officers in the present case "is formidable evidence to support a search." United States v. Genao, 281 F.3d 305, 308 (1st Cir. 2002). These three pieces of indisputably first-hand information contribute to a finding that the affidavit supported a finding of probable cause in this case.

### D. The Sources' Statements Are Self-Authenticating

A second indicia of the veracity of the sources' information is evident from the "specificity and detail" with which the affidavit related the sources' information. United States v. Taylor, 985 F.2d 3, 6 (1st Cir. 1993). Specifically, the sources' description of the manner in which Defendant conducted his drug dealing is notable for the detail it provided as to how he organized his operation in order to avoid police detection and prosecution. The sources reported that the Defendant only dealt in small quantities of drugs from the third floor apartment. The sources also reported that the Defendant kept kilograms of cocaine in a safe in a vacant second floor apartment and additional quantities of cocaine in the common area basement. The sources relayed that Defendant informed them that if the police were to search the second floor apartment and/or basement they would be unable to attribute the cocaine to him. In addition, the sources stated that Defendant informed them that were police to search the basement, they would likely believe they had found the majority of the cocaine and neglect to search the second floor. The sources also reported that Defendant monitored police radio frequencies and maintained video surveillance at 688 Broadway.

The description provided by the sources of the manner in which Defendant conducted his drug dealing operation was sufficiently detailed to imprint their account with a stamp of reliability and contributes to a finding that the affidavit was supported by probable cause.

### E. The Affidavit Contains Several Instances of Corroboration

Many of the sources' statements are corroborated by other information in the affidavit and thus, demonstrate that probable cause was met in the present instance. First and foremost,

Detective Tefft reported that the sources providing much of the information contained in the affidavit were "numerous." The fact that much of the information came from "numerous" individuals, each one corroborating the other, enhances the reliability of the information. In addition, these "numerous" sources reported that the Defendant's nickname was "Gizmo," that the Defendant was trafficking in cocaine from 688 Broadway, and that he told them that he maintained quantities of cocaine in the basement of the building in order to avoid those quantities being attributed to him should the police search the building. (Ex. 1 at 1.) Each of these statements is corroborated by information reported by the CI. The CI purchased a quantity of cocaine from the Defendant, otherwise known as Gizmo, in the third floor apartment at 688 Broadway. Moreover, although the Defendant took the payment for the cocaine on the third floor of the building, he went to the basement in the building to retrieve the drugs. (Id. at 2.) The CI's purchase of cocaine from the Defendant within days of the search warrant application corroborates "material elements" of the sources' information. See Zayas-Diaz, 95 F.3d at 111 n.5 (quoting United States v. Soule, 908 F.2d 1032, 1039 (1st Cir. 1990)). Because this corroboration clearly demonstrates that the sources were correct about some things, "[they were] probably right about others." Zayas-Diaz, 95 F.3d at 111 n.5 (quoting Alabama v. White, 496 U.S. 325, 331 (1990)).

Indeed, in United States v. Genao, 281 F.3d 305, 308-09 (1st Cir. 2002), the First Circuit addressed the extent to which a controlled purchase may be deemed to properly corroborate an informant's prior tip that drugs were being sold in a given location. The Genao court began by discussing its opinions in United States v. Khounsavanh, 113 F.3d 279 (1st Cir. 1997) and United States v. Garcia, 983 F.2d 1160 (1st Cir. 1993). In each of those cases, the court held that one controlled purchase conducted by an informant which corroborated a tip from the informant that the suspect was selling drugs in one of the apartments in a three-story dwelling provided sufficient probable cause to support the search. See Genao, 281 F.3d at 308-09. The controlled purchases in both Khounsavanh and Garcia were conducted in the same manner as the controlled

purchase in the instant case. See Khounsavanh, 113 F.3d at 285-87 and Garcia, 983 F.2d at 1166-67. Moreover, in Genao, despite the fact that after conducting the controlled purchase the informant failed to verify the name of the individual from whom he purchased the drugs or the precise location of the seller in the building, the court upheld the search on the grounds that the purchase yielded a recovery of heroin and corroborated the informant's initial tip that the suspects were selling drugs from the second-floor apartment. 281 F.3d at 309. Genao mandates a finding that probable cause was met in the present instance.

**F. The Affidavit Includes Detective Tefft's Assessment of the Significance of the Sources' and CI's Facts In Light of His Experience and Expertise**

Yet another factor indicating that the information contained in the affidavit more than amply demonstrates probable cause is the fact that the affidavit contains Detective Tefft's assessment of the information provided by both the sources and the CI in light of his experience and expertise. Tefft begins the affidavit by stating "[y]our affiant, Detective Robert Tefft is a member of the Pawtucket Police Department and has been so employed for the past eighteen years. Your affiant holds the rank of detective and has been assigned to the department's Special Squad for the past nine years where his primary duties are to investigate violations of The Uniform Controlled Substance Act." (Ex. 1 at 1.)

At the conclusion of the affidavit, after reciting the information provided by the numerous sources and the CI, Tefft states that:

> Based on [my] knowledge, training an (sic) experience [I] know[] that persons who traffic in large quantities of cocaine often attempt to distance themselves from these large quantities by locating the narcotics away from their residences. It is known to [me] that persons engaged in this illegal activity will often rent residential and commercial locations to store large quantities of illegal narcotics to avoid having these large quantities stored at their residence in an attempt to avoid detection, apprehension and criminal prosecution by the police. It is also known to [me] that persons who traffic in large quantities of illegal narcotics are known to establish video surveillance so that they might be aware of any police presence around the location they keep and store these illegal narcotics.

(Ex. 1 at 2.) Tefft's statements illustrate the significance of the information the sources reported concerning what the Defendant told them about where he maintained his cocaine supply and why. Tefft's averments also highlight the importance of the CI's version of how the controlled purchase took place and, the sources' statements that the Defendant maintained video surveillance equipment at his home. "[T]he issuing magistrate may properly credit the experience and expertise of a law enforcement affiant in evaluating the authenticity of the informant's description of the target's modus operandi." United States v. Taylor, 985 F.2d 3, 6 (1st Cir. 1993). In the present case, the sources' detailed description of the manner in which the Defendant conducted his drug dealing business, which included first hand information, the controlled purchase which corroborated the sources' information, combined with Detective Tefft's assessment of the significance of much of those facts, clearly "demonstrates in some trustworthy fashion the likelihood" that the Defendant was engaged in dealing illegal narcotics at 688 Broadway and that "there [was] sound reason to believe that [the] particular search [would] turn up evidence of it." United States v. Aguirre, 839 F.2d 854, 857-58 (1st Cir. 1988). Accordingly, the motion to suppress should be denied.

**IV. Conclusion**

Based upon the foregoing, the United States respectfully requests that the Court deny Defendant Rene Torres' Motion to Suppress Physical Evidence.

Respectfully submitted,

ROBERT CLARK CORRENTE
United States Attorney

Dated: 6/16/05

[signature]

DULCE DONOVAN
Assistant U.S. Attorney
50 Kennedy Plaza
Providence, Rhode Island 02903
(401) 709-5000

**IN THE DISTRICT COURT OF THE UNITED STATES**

**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | **Cr. No. 05-57T** |
| **v.** | ) | |
| | ) | |
| **RENE H. TORRES** | ) | |

**Certificate of Service**

I hereby certify than on this, the 16th day of June, 2005, I served a true copy of the foregoing "United State's Memorandum in Support of Its Objection to Defendant's Motion to Suppress Physical Evidence" by mailing same, first-class mail, postage pre-paid, to:

David A. Cooper, Esquire
127 Dorrance Street
Providence, Rhode Island 02903.

Paula Harvey